IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01372-CMA-KLM

ALEX OBANDO,

      Plaintiff,

v.

ARISTEDES W. ZAVARAS, DOC Executive Director,
TOM CLEMENTS, DOC Executive Director,
SUSAN JONES, CSP Warden,
MICHELLE NYCZ, Classification Chairperson,
JAMES OLSON, Committee Chairperson,
DAN DENNIS, Committee Member,
JOHN DOE, CSP Assistant Administrative Head, and
KEVIN L. MILYARD,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss or Motion for Summary Judgment** [Docket No. 48; Filed April 9, 2012] ("Defendants' Motion") and on Plaintiff's **Motion for Partial Summary Judgment** [Docket No. 50; Filed April 30, 2012] ("Plaintiff's Motion"). The Motions are referred to this Court for recommendation [#54]. On May 2, 2012, Plaintiff filed a Response [#55] to Defendants' Motion, and on May 16, 2012, Defendants filed a Reply [#56]. On June 4, 2012, Defendants filed a Response [#60] to Plaintiff's Motion. Plaintiff did not file a Reply, despite having been granted an extension of time in which to do so [#73]. The Court has reviewed the briefing, the case file, and the applicable law, and is fully advised in the premises. For the reasons stated below, the

Court respectfully recommends that Defendants' Motion [#48] be **GRANTED**, that Plaintiff's Motion [#50] be **DENIED as moot**, and that Plaintiff's Second Amended Complaint be **DISMISSED without prejudice**.

## I.  Background[1]

Plaintiff is a state prisoner in the custody of the Colorado Department of Corrections ("CDOC") and is presently incarcerated at the Buena Vista Correctional Complex ("BVCC") in Buena Vista, Colorado [#72].  Plaintiff initiated this lawsuit *pro se* pursuant to 42 U.S.C. § 1983 on May 24, 2011 [#1].  In short, he brings two Eighth Amendment claims based on the conditions of his confinement and three Fourteenth Amendment claims based on his placement in administrative segregation.

Plaintiff was incarcerated in 2007 and initially assigned to the Sterling Correctional Facility ("SCF").  *Second Am. Compl.* [#39] at 5.  Upon his incarceration, mental health staff diagnosed Plaintiff with mental illness but determined that it was manageable without medication within the ordinary conditions of confinement.  *Id.*

On June 24, 2010, Plaintiff was placed in the Security Threat Group Offender ("STGO") program because members of a street gang called the Sureños were involved in "illicit activity."  *Id.*  Plaintiff asserts that he was not involved with this activity but that he was placed in the STGO program because of his prior association with a Californian sect

---

[1]  The following facts are those alleged by Plaintiff in his Second Amended Complaint [#39]. Plaintiff attested to the veracity of the Second Amended Complaint pursuant to 28 U.S.C. § 1746, as demonstrated by the "Declaration under Penalty of Perjury" at the conclusion of his Second Amended Complaint.  *See Second Am. Compl.* [# 39] at 22. The Court therefore treats the Second Amended Complaint as an affidavit and accepts the allegations stated therein as true in the absence of a contradictory material fact proffered by Defendants.  *See Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir.1997).  For the sake of clarity, the Court reserves discussion of additionally submitted and supported pertinent evidentiary facts in the context of the Analysis below.

of the Sureños.  *Id.*  Later, on November 1, 2010, Defendant Aristedes W. Zavaras, who was then CDOC Executive Director, established Administrative Regulation ("AR") 600-07.IV.C.1.d., which Plaintiff avers allows for placement of a prisoner in administrative segregation solely on the basis of "association with a security threat/disruptive group."  *Id.* at 13.

On December 3, 2010, Plaintiff completed the STGO program but, before he was permitted to return to the general population, he was instructed to fill out and sign a STGO review/debriefing form.  *Id.*  In part, the form sought information from Plaintiff regarding any of his illicit activities unknown to authorities and other potentially self-incriminating information, such as a list of all associates, nicknames, and admission of active membership in a Security Threat Group.  *Id.* at 5-6, 19.  Plaintiff invoked his Fifth Amendment privilege and refused to sign the form until he could speak with someone about how any information he provided could be used against him.  *Id.* at 6.

On December 28, 2010, Plaintiff was placed in administrative segregation by Defendant Michelle Nycz ("Nycz") for an indefinite term due to his unwillingness to complete and sign the STGO form and because of his previous association with the Sureños in California.  *Id.* at 6, 7.  Plaintiff avers that Defendant Nycz was aware of his mental illness when she made the decision to place him in administrative segregation.  *Id.* at 7.  Plaintiff's placement in administrative segregation was allegedly approved by Defendant Kevin L. Milyard ("Milyard"), SCF Warden and Deputy Director of Prisons.  *Id.* at 14.  Plaintiff alleges that since December 28, 2010, he has been deprived of any form of outdoor exercise and denied sufficient time and space for other forms of out-of-cell exercise.  *Id.* at 6, 11.  He asserts that his exercise has been limited to a bare cell of

3

approximately 90-square-feet for one hour, five times per week and that he is otherwise confined to his cell which has only about 33 square feet of unencumbered space. *Id.* at 10. He also states that, as a result of exercise deprivation, his muscles have begun to degenerate and his mental health has further deteriorated, as described more fully below. *Id.* at 11-12.   On January 12, 2011, Defendant Milyard denied Plaintiff's appeal of his placement in administrative segregation. *Id.* at 14.

On February 2, 2011, Plaintiff was transferred to the Colorado State Penitentiary ("CSP"), a maximum security prison facility. *Id.* at 6.   On April 18, 2011, Plaintiff first reported deterioration of his mental health, purportedly based on the conditions of his confinement. *Id.* at 6.   Plaintiff made this report to mental health clinician Michelle Smith ("Smith"), telling her that he was "suffering from hallucinations; decreased sleep, appetite and energy; feeling paranoid and anxious; having racing thoughts and struggling with concentration." *Id.* at 7.   He further reported that he felt "uncomfortable" and as if someone were constantly watching him. *Id.*   He also reported that he had stopped engaging in pleasurable activities such as drawing, writing to friends and family, exercising, reading, and talking to others. *Id.*   Ms. Smith informed Plaintiff that his symptoms were not uncommon among incarcerated individuals with pre-existing mental health needs because of the extreme sensory deprivation imposed on them in administrative segregation. *Id.* She also told him that, as a mental health clinician, all she was permitted to do to help Plaintiff was provide medication and "hope for the best." *Id.*

On May 19, 2011, Plaintiff was placed on psychotropic medication in connection with his mental health deterioration. *Id.* at 6.   Dr. Kevin K. Snyder ("Snyder") interviewed Plaintiff and assessed him as suffering major depression and antisocial personality disorder

based on Plaintiff's inability to cope with the conditions of administrative segregation. *Id.* at 7. Dr. Snyder prescribed Celexa to ease Plaintiff's symptoms. *Id.* at 7-8. Plaintiff asserts that the medication has not resolved his issues:

> He sees shadows moving that are not real. He feels unknown people are watching him. He has difficulty sleeping due to anxiety and frequent nightmares. His appetite and energy levels have decreased. His paranoia continues. He is fearful of the guards who place him in restraints and search his body several times a day. He paces back and forth for several hours a day in the 33-square feet of unencumbered space he is confined to 23 hours a day, dwelling on the hopelessness of his life and prospects of the future. The pacing motion (four steps, about-face, four steps) causes pain to his ankles and knees after even a short period due to the excessive pivoting (the about-face [maneuver] occurs about every three seconds). His headaches are more frequent and severe (a side [effect] of the medication).

*Id.* at 8. Five days after meeting with Dr. Snyder, Plaintiff initiated this lawsuit [#1].

On June 2, 2011, Plaintiff states that C.R.S. § 17-1-109 was amended to proscribe restrictive confinement of offenders based solely on association with a Security Threat Group. *Id.* at 6. The amendment specifically defined the type of misconduct that was required before restrictive confinement could be used. *Id.* at 6. Plaintiff asserts that, despite the change in the law, the periodic reviews of his administrative segregation that took place in June and July of 2011 determined, without any meaningful review, that Plaintiff's continued administrative segregation was warranted due to his prior associations with the California Sureños. *Id.* at 6, 16. These reviews, which Plaintiff avers "have become a rote exercise," were conducted by Defendant Dan Dennis ("Dennis"), Defendant James Olson ("Olson"), and Defendant John Doe, Classification Committee members. *Id.* at 16. Plaintiff asserts that Defendant John Doe and/or Defendant Susan Jones, CSP Warden, approved Plaintiff's retention in administrative segregation. *Id.* at 17. Plaintiff also asserts that Defendant Tom Clements, the present CDOC Executive Director, failed to

ensure that the CDOC's administrative regulations comply with C.R.S. § 17-1-109.  *Id.* at 17.

On December 5, 2011, Defendant Milyard reversed the decision to place Plaintiff in administrative segregation, placed Plaintiff in the Thinking for a Change program, and returned Plaintiff to SCF.  *Id.* at 4, 14.  Plaintiff filed his Second Amended Complaint [#39] on March 16, 2012.  On July 31, 2012, Plaintiff was moved from SCF to BVCC [#72].

In connection with these underlying events, Plaintiff asserts five claims against Defendants: (1) Eighth Amendment claim for subjecting Plaintiff to indefinite placement in administrative segregation, thereby causing known exacerbation of his mental illness; (2) Eighth Amendment claim for deprivation of outdoor exercise and the minimum-required time and space for out-of-cell exercise; (3) Fourteenth Amendment due process claim in connection with his indefinite placement in administrative segregation on the basis of his membership in a Security Threat Group; (4) Fourteenth Amendment due process claim for failure to provide him with meaningful reviews to determine whether his continued placement in administrative segregation is necessary; and (5) Fourteenth Amendment due process claim in connection with his placement in administrative segregation because he refused to sign a status review form after completing the core curriculum of the STGO program.  *Second Am. Compl.* [#39] at 7-20.

As relief, Plaintiff seeks, in short: (1) a declaratory judgment that "the acts, omissions, policies, and conditions described above are in violation of the Eighth and Fourteenth Amendments;" (2) a permanent injunction enjoining "Defendants from subjecting Plaintiff to the unconstitutional and unlawful acts, omissions, policies, and conditions" described in connection with his Eighth and Fourteenth Amendment claims; and

(3) punitive damages in connection with his Fourteenth Amendment claims. *Id.* at 9, 12, 15, 18, 20, 22.

Defendants seek dismissal of Plaintiff's entire lawsuit. First, they assert that the Court is without subject matter jurisdiction to examine the merits of Plaintiff's claims because Plaintiff is no longer housed at CSP and any claim premised on the conditions and effect of the conditions at CSP is now moot.[2]   *See Defs.' Motion* [#48] at 5-6. Second, based on Plaintiff's asserted failure to exhaust administrative remedies, Defendants seek entry of summary judgment on the portion of Plaintiff's Eighth Amendment claim dealing with the denial of outdoor exercise.[3]   *See Defs.' Motion* [#48] at 4-5. Similarly, Defendants seek entry of summary judgment on the same basis on Plaintiff's fifth claim "that he has been retaliated against since December 2010."[4]   *Id.* at 4-5. Third, Defendants also seek

---

[2]  Additionally, Defendants sought dismissal of Plaintiff's claims for monetary damages against them in their official capacities on the basis of Fed. R. Civ. P. 12(b)(1). *Defs.' Motion* [#48] at 7-8. However, although Plaintiff's Amended Complaint does not specify whether he brought his lawsuit against Defendants in their individual or official capacities, or both, Plaintiff clarifies in his Motion that he is not seeking monetary damages from Defendants in their official capacities, but only in their individual capacities. *Pl.'s Motion* [#50] at 9. Defendants' Rule 12(b)(1) argument on this basis is therefore moot.

[3]  Defendants have not sought summary judgment on the other half of Plaintiffs' second claim, dealing with denial of other types of adequate out-of-cell exercise, on the basis of failure to exhaust. *See Defs.' Motion* [#48] at 4-5. They have moved for summary judgment on that portion of Plaintiff's second claim on the basis of mootness and for dismissal based on qualified immunity and failure to state a claim upon which relief can be granted. *See id.* at 5-6, 8-10, 14-15.

[4]  Defendants also argue in their Motion that Plaintiff failed to exhaust his administrative remedies with respect to claims and allegations "relating to his mental health conditions and mental health treatment since he has been incarcerated at [CSP]" and those allegations "relating to claims that he has been involved in [STG] activity." *Defs.' Motion* [#56] at 4-5. Plaintiff provided a thorough argument regarding Defendants' assertions in his Response. *Pl.'s Response* [#55] at 7-9. In their Reply, Defendants continue to argue that Plaintiff failed to exhaust his administrative remedies with respect to denial of outdoor exercise and retaliation, but they drop their arguments on all other points. *See Defs.' Reply* [#56] at 1-2. The Court therefore finds that Defendants have conceded their failure-to-exhaust arguments with respect to Plaintiff's mental health conditions /treatment and alleged Security Threat Group activity.

dismissal of Plaintiff's claims on the basis of Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.  *Defs.' Motion* [#48] at 8-15.  In addition, Plaintiff seeks summary judgment on his three Fourteenth Amendment claims (Claims Three, Four, and Five).  *See Pl.'s Motion* [#50] at 1.

## II.  Standard of Review

### A.    Fed. R. Civ. P. 56

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his

8

claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Complaint [#3] and Response [#55], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility

9

for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'"  *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d at 269 (citations omitted).

**B.      Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass

10

a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

### III.  Analysis

Although Defendants make the mootness argument in the context of their summary

judgment discussion, they essentially seek a ruling on whether the Court has subject matter jurisdiction over this action.  The Court will therefore discuss this argument first.  *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").  The Court next turns to Defendants' arguments concerning exhaustion of administrative remedies. *See Norton v. The City of Marietta, OK*, 432 F.3d 1145, 1149-50 (10th Cir. 2005) (stating that exhaustion is mandatory and that the issue of administrative exhaustion under the Prison Litigation Reform Act must be considered before examining the merits of the plaintiff's claims).  Finally, the Court examines the merits of Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 12(b)(6).

## A.    Defendants' Motion for Summary Judgment

### 1.    Mootness

Defendants seek a ruling on whether the Court has subject matter jurisdiction over Plaintiff's claims regarding the conditions at CSP and the effect of those conditions on Plaintiff.  *Defs.' Motion* [#48] at 5-6.  Defendants argue that these claims are now moot because Plaintiff is indisputedly no longer housed at CSP.  *Id.*; *see also Second Am. Compl.* [#39] at 14; *Notice of Change of Address* [#72].  Plaintiff first argues in his Response that Defendants failed to provide evidence that he is no longer being subjected to the same restrictive conditions outlined in his Second Amended Complaint.  *Pl.'s Response* [#55] at 5-6.  Plaintiff then argues that he could be returned to CSP at any time and that denial of his claims on mootness grounds "would leave the defendants free to return to their old ways."  *Id.* at 6.

12

Mootness is an issue of subject matter jurisdiction, which can be raised at any stage of the proceedings.[5]  *Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  When reviewing a factual attack on a complaint, the Court generally "may not presume the truthfulness of the complaint's factual allegations."[6]  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  In a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).

This Court has no jurisdiction to consider moot cases, that is, cases in which "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation

---

[5] The Court may also consider the question of subject matter jurisdiction *sua sponte* at any time. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009).

[6] Here, the Court may do so because Plaintiff attested to the veracity of the Second Amended Complaint pursuant to 28 U.S.C. § 1746.  *See Second Am. Compl.* [# 39] at 22; *supra* n.1.

omitted).  "It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed."  *Deberry v. Davis*, 460 F. App'x 796, 799 (10th Cir. 2012) (internal quotations and citation omitted). A claim may become moot at any point in the controversy and deprive the Court of authority to decide questions which had previously been at issue.  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990).  "[I]t is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." *McLendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).  Nevertheless, the Court will not dismiss a case as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."  *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (citations omitted).

### a.    Whether Relief Sought by Plaintiff is Moot

In short, the crux of Defendants' Motion is that Plaintiff's requested relief in this matter is retrospective and moot, because he is no longer subject to the restrictions imposed at CSP.  *See Defs.' Motion* [#48] at 5-6; *Defs.' Response* [#60] at 16; *Defs.' Reply* [#56] at 2-3.  Defendants contend that because Plaintiff is no longer housed at CSP (and not subject to CSP's more restrictive limitations), Plaintiff no longer suffers from the pled injuries.  *See Defs.' Response* [#60] at 16.  Because application of the mootness doctrine requires examination of whether "the parties lack a legally cognizable interest in the outcome," *Geraghty*, 445 U.S. at 396, the Court must first examine the relief sought by Plaintiff to see whether it is mooted based on Plaintiff's transfer from CSP.  *See Second*

14

*Am. Compl.* [#39] at 22.

### i.    Punitive Damages

Plaintiff seeks punitive damages in connection with his three Fourteenth Amendment claims but not his two Eighth Amendment claims. *See Second Am. Compl.* [#39] at 9, 12, 15, 18, 20.

An inmate's constitutional claims for punitive damages are not rendered moot by the fact that he is no longer incarcerated at the facility where the alleged violations occurred. *McDaniels v. McKinna*, 96 F. App'x 575, 581 (10th Cir. 2004). In addition, the Tenth Circuit has held that later revision in the law or policy challenged by an incarcerated plaintiff does not moot the prisoner's request for punitive damages. *Id.* (citing *Committee for the First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir. 1992); *O'Connor v. City and County of Denver*, 894 F.2d 1210, 1215-16 (10th Cir. 1990)). Thus, even if Plaintiff's transfer to another facility moots his claims for declaratory or injunctive relief, which the Court discusses below, his claims for punitive damages are not automatically made moot by the mere fact of his transfer. *McDaniels*, 96 F. App'x at 581.

The Court therefore finds it must address the merits of the legal claims for which Plaintiff seeks to recover punitive damages. Plaintiff's requests for punitive damages in connection with his Fourteenth Amendment claims are not moot on the basis of lack of subject matter jurisdiction.

### ii.    Declaratory Judgment

Plaintiff seeks a declaratory judgment in connection with all five of his claims, as follows: (1) "that defendants are violating his constitutional rights," (2) "that defendants are violating his Eighth Amendment right by depriving him an opportunity for regular outdoor

15

exercise and sufficient time and space for out-of-cell exercise," (3) "that defendants lacked a sufficient evidentiary basis for placing him in administrative segregation and depriving him of a protected liberty interest," (4) "that defendants are violating his constitutional right to meaningful periodic reviews where the evidence demonstrates the review process being applied is a sham," and (5) "that defendant Nycz retaliated against him for exercising his constitutional right to remain silent by reclassifying him to admin[istrative] seg[regation]." *Second Am. Compl.* [#39] at 9, 12, 15, 18, 20.  Defendants argue that all of these requests are moot.

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)).  "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff.*" *Id.* (citations omitted).  In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Id.*

Here, Plaintiff seeks a declaratory judgment that his constitutional rights were violated.  However, even if the Court were to grant his request regarding each of the five causes of action, the declaratory judgment would not "affect[ ] the behavior of defendant[s] toward the plaintiff," because Defendants would not be required to take any course of

16

action. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). Plaintiff is no longer confined at CSP in particular or in administrative segregation anywhere. *Second Am. Compl.* [#39] at 14. Therefore, whether or not the Court grants his request for declaratory judgment, Defendants' future behavior toward Plaintiff will not be affected, because a holding that Plaintiffs' constitutional rights have been violated would not necessitate changes in how he is being treated by Defendants. In other words, Plaintiff is seeking a retrospective opinion that Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").

Plaintiff's requests and supporting allegations found in the Second Amended Complaint simply do not state "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Court therefore finds that Plaintiff's five requests for declaratory judgment are moot. *See Green*, 108 F.3d at 1300 (conditions of confinement claim mooted by transfer and release of inmate) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison)).

### iii.   Injunctive Relief

17

Plaintiff also seeks injunctive relief in connection with all five of his claims, as follows: (1) "requiring the defendants to return him to general population[-]like conditions," (2) "requiring defendants to allow Plaintiff daily exercise opportunities in the facility's gym and outdoor recreation area;" (3) requiring Defendants to reclassify Plaintiff "to a custody level below administrative segregation;" (4) "requiring the defendants to conduct a review which takes notice of Section 17-1-109(2)(a)'s proscription on admin[istrative] seg[regation] placement on the bases of association with an STG alone, and initiate the process for removal under AR # 600-02.IV.Q.;" and (5) "requiring the Plaintiff [to] be returned to the general population prison setting." *Second Am. Compl.* [#39] at 9, 12, 15, 18, 20. Defendants argue that all of these requests are moot.

"Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' " *Jordon*, 654 F.3d at 1024 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Plaintiff has not alleged facts illustrating that he is being injured in an ongoing and continuous manner based on his past incarceration at CSP or by his current conditions of confinement, because he has asserted that he is no longer incarcerated at CSP or in administrative segregation. *Second Am. Compl.* [#39] at 14. In addition, he has provided no allegations or evidence that his current facility or conditions are substantially the same as those he allegedly endured at CSP. Thus, Plaintiff has not alleged the "real and immediate" injury necessary for entry of injunctive relief. *See Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (stating that claim for injunctive relief was moot where allegations of "real and immediate" injury were attenuated). The Court therefore finds that

18

Plaintiff's five requests for injunctive relief are moot.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (when a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief)).

### b.    Whether Exceptions to Mootness Doctrine Apply

Having found that Plaintiff's requests for declaratory and injunctive relief are moot, the Court next examines the exceptions to the mootness doctrine.  Plaintiff responds to Defendants' mootness argument by asserting that he could be transferred back to CSP at any time.  *Pl.'s Response* [#55] at 5-6.  Thus, the second and third exceptions to the mootness doctrine are at issue in this case, pertaining to Plaintiff's contention that the wrongs he has alleged are capable of repetition yet evading review, and that the allegedly illegal practices could be resumed by Defendants at any time.[7]  Defendants bear the burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated," as required by application of the voluntary cessation exception.  *Binsz v. Cody*, 38 F.3d 1220, 1994 WL 577558, at *2 (10th Cir. 1994) (unpublished) (citation omitted).  However, Plaintiff bears the burden of establishing the applicability of the exception that the

---

[7]  In connection with the exception to the mootness doctrine pertaining to secondary or collateral injuries that survive after resolution of the primary injury, Defendants raise the issue of Plaintiff's loss of earned-time credits.  *See Riley*, 310 F.3d at 1257.  Plaintiff denies seeking restoration of his earned-time credits, however, so this exception to the mootness doctrine is not at issue here.  *See Pl.'s Response* [#55] at 12.

wrongs are capable of repetition yet evading review. *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011). Here, the Court finds that Defendants have met their burden, whereas Plaintiff has not. As outlined below, the Court finds that, accepting Plaintiff's allegations as true, Plaintiff does not present a reasonable likelihood that he will be reassigned to CSP. *Pl.'s Response* [#55] at 5-6.

### i.   Voluntary Cessation

The only evidence provided by Defendants to establish mootness is Plaintiff's Offender Profile [#60-7], which indicates that Plaintiff has been incarcerated at CSP[8] for one period of time only, from February 2, 2011 to December 30, 2011.[9] *Ex. A-8, Offender Profile* [#60-7]. On December 5, 2011, Defendant Milyard made the decision to remove Plaintiff from administrative segregation and to transfer him from CSP to SCF.[10] *Second Am. Compl.* [#39] at 14. Plaintiff's Offender Profile [#60-7] confirms that Plaintiff was physically transferred from CSP to SCF on December 30, 2011. Plaintiff states that he was placed in the "Thinking for a Change" program at that time. *Second Am. Compl.* [#39] at 14. Although the briefs do not explain what the "Thinking for a Change" program is, it appears to be a series of cognitive development classes which, if successfully completed by the inmate, are the final step in his progression out of administrative segregation. *Anderson v. Colorado*, ___F. Supp. 2d __, __, No. 10-cv-01005-RBJ-KMT, 2012 WL

---

[8] CSP houses only the "most violent, dangerous, and disruptive offenders." *See* http://www.doc.state.co.us/facility/csp-colorado-state-penitentiary.

[9] "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt*, 46 F.3d at 1003.

[10] SCF houses offenders of all custody levels. *See* http://www.doc.state.co.us/facility/scf-sterling-correctional-facility.

3643063, at *15 (D. Colo. Aug. 24, 2012).  There is nothing in the record regarding whether Plaintiff has completed the "Thinking for a Change" program and has therefore successfully conquered the last hurdle to be released from administrative segregation.   However, Plaintiff's successful completion of the program can be inferred from his subsequent transfer from SCF to the BVCC [#72], which houses only medium and minimum restrictive custody offenders.[11]  There is nothing in the briefs indicating whether Plaintiff continues to be classified as a member of a Security Threat Group.  However, Plaintiff asserts in his Second Amended Complaint that he is no longer associated with the Sureños.  *Second Am. Compl.* [#39] at 5.

Defendants' properly supported assertions along with Plaintiff's Second Amended Complaint demonstrate to the Court that there is no reasonable expectation that Plaintiff will be reassigned to CSP.  *See McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail").

Additionally, the Court of Appeals for the Fourth Circuit adjudicated an analogous case, which provides this Court with persuasive authority.  In *Incumaa v. Ozmint*, the Fourth Circuit evaluated a lawsuit in which the incarcerated plaintiff challenged a ban on receiving publications by mail, which was a restriction imposed while he was housed in a maximum security unit.  507 F.3d 281, 282-83 (4th Cir. 2007).  After the plaintiff initiated the lawsuit, he was transferred out of the maximum security unit, and had not been reassigned to the

---

[11]  *See* http://www.doc.state.co.us/facility/bvcc-buena-vista-correctional-complex.

maximum security unit for over two years.  *Id.* at 282.  The court noted that "there [was] no indication that the [maximum security unit] ban [would] ever apply to him again, save some serious misstep on his part."  *Id.* at 283.  Reassignment to the more restrictive unit was "directly tied to an inmate's bad behavior, so [the plaintiff] thus 'holds the keys' to his remaining free from the unit."  *Id.* at 289.  Therefore, the Fourth Circuit held that the mootness doctrine applied without exception, and the court affirmatively declined to "base [its] mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules."  *Id.*

The same holds true in this lawsuit.  Whether Plaintiff is reassigned to CSP is a matter in his own hands; like *Incumaa*, Plaintiff "'holds the keys' to his remaining free from the unit."  *See id.* at 289.  Therefore, the Court finds that the voluntary cessation exception (as well as the below-described exception concerning acts capable of repetition yet evading review) to the mootness doctrine is inapplicable to the instant case.[12]

### ii.   Capable of Repetition Yet Evading Review

The remaining inquiry regarding the "capable of repetition yet evading review"

---

[12]   The Court notes that a District Judge in the District of Colorado recently held that the voluntary cessation exception to the mootness doctrine applied to an inmate in administrative segregation at CSP who had subsequently been transferred to another lower security facility.  *See Ind v. Colo. Dep't of Corr.*, No. 09-cv-00537-WJM-KLM, 2012 WL 4033826, at *3-6 (D. Colo. Sept. 13, 2012).  The facts in that case are distinguishable from the facts in the present lawsuit, however. There, the plaintiff had been incarcerated at CSP and at the Colorado Correctional Facility ("CCF"), which is part of the same correctional facility complex, for more than eleven years out of the seventeen in which he had been incarcerated.  *Id.* at *5.  The time spent at CSP and CCF involved four separate transfers between facilities.  *Id.*  Here, Plaintiff was transferred to CSP once and has spent only approximately eleven months there since his initial incarceration in November 2007.  *Ex. A-8, Offender Profile* [#60-7].  In addition, the plaintiff in *Ind* was a member of a Security Threat Group and was admittedly actively recruiting members to his group.  *Ind*, 2012 WL 4033826, at *6. Here, Plaintiff states that he only has a "prior association" with a Security Threat Group.  *Second Am. Compl.* [#39] at 5.  The Court therefore finds that the holding in *Ind* is distinguishable from the present case.

exception to the mootness doctrine turns on whether Plaintiff has established a demonstrated probability that he will be reassigned to CSP in the future, and thereby will again be subjected to the restrictions at issue in this case.   See *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . ."); *Underwood v. United States*, 255 F. App'x 337, 338 (10th Cir. 2007) ("[P]laintiff must do more than speculate about future possibilities.   [Plaintiff] must show a 'reasonable expectation' or a 'demonstrated probability' that this same controversy . . . will recur." (internal quotations and citation omitted)).   Here, as stated, Plaintiff contends that he may be reassigned to CSP at any time before his term of incarceration is completed.   *Pl.'s Response* [#55] at 6.

Weighing both sides' presented evidence and argument,[13] the Court concludes that Plaintiff has not demonstrated with any specificity or immediacy that he will be reassigned to CSP.   Like the Tenth Circuit's determination in *Jordan v. Sosa*, Plaintiff "offers [the Court] nothing to validate the reasonableness of his expectancy of changed conditions of penal confinement."   654 F.3d at 1036.   Plaintiff has been assigned to CSP only once during the duration of his incarceration, and he has since been transferred to a less restrictive facility, BVCC.   Making a decision as to the restrictions imposed at CSP, especially regarding this Plaintiff who is no longer incarcerated at CSP and who has not established a demonstrable probability that he will be reassigned to CSP, would constitute rendering an impermissible

---

[13] As noted above, the Court must make its own findings of fact when determining whether it has subject matter jurisdiction.   *Holt*, 46 F.3d at 1003.   To make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."   *Id.*

advisory opinion.  *See Deberry*, 460 F. App'x at 799.  Therefore, the Court finds that the exception to the mootness doctrine for situations that are capable of repetition yet evade review is inapplicable to the instant case.  *See McKinnon*, 745 F.2d at 1363 (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail").

The Court's conclusions are consistent with *Jordan v. Sosa*.  In *Jordan*, the Tenth Circuit evaluated an incarcerated plaintiff's challenge to "the constitutionality of a statutory and regulatory ban on the use of federal funds to distribute to federal prisoners commercially published materials that are sexually explicit or feature nudity."  654 F.3d at 1015.  After resolution of the matter by the district court, the plaintiff was transferred from a more restrictive federal facility (like CSP) to other federal Bureau of Prisons facilities.  *Id.* at 1018.  Thus, on appeal, the Tenth Circuit was compelled to address whether any part of the case was mooted by the plaintiff's transfer from solitary confinement at the more restrictive facility to a "Special Management Unit" ("SMU") at a facility outside of the court's jurisdiction.  *Id.*; *id.* at 1021-22.  The Tenth Circuit noted the government's concession that, despite the transfer, SMU inmates (including the plaintiff) were indeed subject to the ban in dispute.  *Id.* at 1022.  Accordingly, the plaintiff maintained that the case was not moot, because he remained subject to the challenged ban.  *Id.* at 1023.  The Tenth Circuit ultimately held that the plaintiff's case was constitutionally moot, and that the same two exceptions at issue in this matter were not applicable.  *See id.* at 1036-37.

The Tenth Circuit opined that, "[w]here a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is

24

insufficient. . . .  Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance - past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 1024 (internal quotations and citations omitted). In the specific context of prison transfers, the Tenth Circuit stated: "Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief." *Id.* at 1027.  In the absence of an applicable exception to the mootness doctrine (*i.e.*, as resolved above), transfer indicates "the end of the alleged deprivation of [the prisoner's] constitutional rights." *See id.*; *see also id.* at 1028-29 (recognizing that prisoners will often sue the director of the prison system or the system itself in order to invoke exceptions to the mootness doctrine).

In light of the above-stated legal precedent, neither relevant exception to the mootness doctrine applies here, and the Court therefore lacks subject matter jurisdiction over Plaintiff's claims.  Thus, if the Court issued an order granting the relief requested, the order would be an impermissible advisory opinion regarding conditions of confinement at CSP and would have no "effect in the real world" for Plaintiff. *See id.* at 1029.  "[A]s a federal court, [the Court is] not in the business of rendering such feckless judgments." *Deberry*, 460 F. App'x at 799.

As stated above, Plaintiff's claims regarding the conditions of confinement at CSP (*e.g.*, placement at CSP due to Security Threat Group classification) are moot due to Plaintiff's transfer out of CSP (and out of the CSP/CCF complex completely); thus, the mootness doctrine precludes his constitutional claims arising from those challenged

25

conditions, and precludes any injunctive relief that could be imposed against Defendants. *See Jordan*, 654 F.3d at 1026 (if the plaintiff has not named as defendants "individuals or entities that are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights . . . , courts are likely to determine that they cannot accord the plaintiff effective declaratory relief and that the action is moot."). Thus, in sum, the Court **recommends** that Defendants' Motion be **granted** as to Plaintiff's claims for declaratory judgment and injunctive relief and that these claims be **dismissed without prejudice as moot**. *See Lewis v. Burger King*, 398 F. App'x 323, 325 n.3 (10th Cir. 2010) (dismissal due to mootness must be without prejudice). Because Plaintiff seeks only a declaratory judgment and injunctive relief in connection with his Eighth Amendment claims, the Court further **recommends** that Claim One and Claim Two be **dismissed without prejudice as moot** in their entirety for lack of subject matter jurisdiction. Finally, because Plaintiff does not seek monetary damages against Defendants in their official capacities and seeks only a declaratory judgment and injunctive relief against them, the Court further **recommends** that all of Plaintiff's claims against Defendants in their official capacities be **dismissed without prejudice as moot**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216–17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

### 2. Exhaustion of Administrative Remedies

Defendants next argue that Plaintiff failed to fully and properly exhaust his

administrative remedies in connection with his Fourteenth Amendment claim concerning retaliatory placement in administrative segregation (Claim Five).[14]  *Defs. Motion* [#48] at 4-5.  Defendants seek entry of summary judgment in their favor on this issue.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted before a prisoner may challenge those conditions by filing suit.  *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences.").  Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The prison facility is tasked with the responsibility of establishing grievance procedures.  *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion.").

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").  However, the burden is not on Plaintiff to sufficiently plead exhaustion or attach exhibits to his Second Amended Complaint proving exhaustion. *Jones*, 549 U.S. at 215.  Rather, the burden is on Defendant to assert the failure to exhaust in a dispositive motion.  Here, Defendant's failure to exhaust defense is analyzed pursuant

---

[14]  As the Court recommends dismissal of Plaintiff's Eighth Amendment claims on the basis of mootness, the Court declines to adjudicate Defendants' additional failure-to-exhaust argument regarding lack of access to outdoor exercise.

to Fed. R. Civ. P. 56.  As such, if the evidence presented does not create a genuine issue of material fact as to whether his claim against Defendant was properly exhausted, the Complaint must be dismissed without prejudice.  *Arocho v. Lappin*, No. 07-cv-02603-REB-KLM, 2011 WL 2292187, at *8 (D. Colo. Apr. 21, 2011) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice)); *cf. Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) (recognizing that dismissal of untimely grievance should be with prejudice), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008)).

In connection with Plaintiff's retaliation claim (Claim Five), Defendants submitted evidence that there is no record that Plaintiff filed a Step 3 grievance relating to any claim that he has experienced retaliation since December 2010.  *Aff. of DeCesaro* [#48-1] ¶ 13. Plaintiff responds with two arguments.  First, he argues that the sworn statement in his Second Amended Complaint that he exhausted all available administrative remedies is enough to create an issue of material fact and preclude entry of summary judgment in favor of Defendants on this issue.  *Pl.'s Response* [#55] at 7.  Second, he argues that his retaliation claim is based on the decision to place Plaintiff in administrative segregation and to keep him there, and that the only available remedy for such a situation is through an offender appeal, not through the grievance process.  *Id.* at 8.  Defendants reply that Plaintiff did not argue that he exhausted his administrative remedies in connection with his retaliation claim, and thus the claim should be dismissed.[15]  *Defs.' Reply* [#56] at 2.

---

[15]  Defendants' Reply is enigmatic on this issue.  Plaintiff clearly references his retaliation claim in his Response and makes an explicit argument with respect to it.  *Pl.'s Response* [#55] at

Plaintiff argues that the grievance process is not available for review of administrative segregation placement. *Pl.'s Response* [#55] at 7. The grievance process is set forth in AR 850-04. *Ex. A, Aff. of DeCesaro* [#48-1] ¶ 4 & attach 1. Plaintiff points specifically to AR 850-04 § IV.A.5 in support of his argument. *Pl.'s Response* [#55] at 8. That regulation states: "This grievance procedure may not be used to seek review of . . . administrative segregation . . . ." *Ex. A, Aff. of DeCesaro* [#48-1] at 6 (attach 1). It further states: "[A]dministrative segregation placements . . . have exclusive appeal procedures." *Id.* This language of the administrative regulation is clear that the grievance process is not the correct mechanism to use in connection with administrative segregation placements, in spite of Defendants' bald assertion to the contrary. *See Defs.' Motion* [#48] at 4-5. Plaintiff's fifth claim asserts that he was retaliated against for invoking his Fifth Amendment right to silence by being placed in administrative segregation. *Second Am. Compl.* [339] at 19-20. Thus, the complained-of retaliation was placement in administrative segregation and CDOC regulations explicitly state that the grievance procedure is not the appropriate process to address this issue.[16] On this record, therefore, the Court cannot find that there is no genuine issue of material fact or that Defendants are entitled to judgment as a matter

---

8. In direct opposition to Defendants' statement, Plaintiff plainly argues that he did exhaust his available administrative remedies, but that the available remedies were through the Offender Appeal process, not the grievance process. *Id.* Defendants fail to make a substantive reply to this argument. *Defs.' Reply* [#56] at 2.

[16] Plaintiff asserts that the appropriate available administrative remedy was to file an offender appeal pursuant to AR 600-02 § IV.O., although a copy of this regulation does not appear to be before the Court at present. *Pl.'s Response* [#55] at 8. Plaintiff provides a copy of his offender appeal, including a copy of its denial on the merits. *Aff. of Pl.* [#51] at 4-18. Defendants' Motion merely argues that Plaintiff failed to complete the grievance process and does not address whether he properly completed the offender appeal. *Defs.' Motion* [#48] at 4-5. The Court therefore does not address whether Plaintiff properly exhausted his administrative remedies through the offender appeal process.

of law due to Plaintiff's alleged failure to exhaust administrative remedies.  Accordingly, the Court declines to recommend that Defendant's Motion be granted to the extent that it seeks a determination that Plaintiff failed to exhaust administrative remedies in connection with his retaliation claim.

**B.     Defendants' Motion to Dismiss**

Defendants also seek dismissal of Plaintiff's Fourteenth Amendment claims pursuant to Fed. R. Civ. P. 12(b)(6).[17]

### 1.     *Heck v. Humphrey*

Defendants first argue that Plaintiff's due process claims are barred due to Plaintiff's failure to obtain a "favorable termination" of his prison disciplinary conviction.  *Defs.' Motion* [# 48] at 10-11.  Defendants contend that a person cannot bring a § 1983 action based on an alleged invalid conviction or sentence unless the conviction or sentence has previously been invalidated, citing *Heck v. Humphrey*, 512 U.S. 477 (1994).  Defendants argue that prior to bringing this action, Plaintiff must first obtain a favorable termination of his prison disciplinary conviction, as Plaintiff "alleges in his complaint that he has 'been denied a reduction of sentence of ten-days per month, that would have otherwise been awarded.'" *Defs.' Motion* [#48] at 12 (quoting *Second Am. Compl.* [#39] at 14).

*Heck v. Humphrey* involved a § 1983 claim arising out of alleged unlawful acts by state prosecutors and police officers which led to the plaintiff's arrest and ultimate conviction.  512 U.S. at 479.  In *Heck*, the Supreme Court held that "when a state prisoner

_____

[17]  As the Court recommends dismissal of Plaintiff's Eighth Amendment claims on the basis of mootness, the Court does not address Defendants' arguments seeking dismissal of those claims on the basis of Fed. R. Civ. P. 12(b)(6).

seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. If so, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The Supreme Court's holding in *Heck* has also been extended to prison disciplinary convictions that deprive a prisoner of earned time credits. *See Edwards v. Balisok*, 520 U.S. 641 (1997). However, only claims which "necessarily implicate the fact or duration of" a prisoner's confinement are barred; claims that relate solely to a prisoner's "conditions of incarceration" are not subject to *Heck*'s favorable termination requirement. *Torres v. Fauver*, 292 F.3d 141, 145 (3d Cir. 2002). That is, the "assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Muhammad v. Close*, 540 U.S. 749, 752 n.1 (2004). *Heck* bars a collateral attack on prison disciplinary convictions only if the claim challenges the loss of an earned time credit or if it is a collateral attack on the prisoner's underlying conviction. *Id.* at 754. The effect of disciplinary proceedings on this credit is a matter of state law or regulation. *Id.*

Plaintiff suggests that, as a result of his time spent in administrative segregation, he was denied a reduction in his sentence because he would have received earned time credit of ten days per month while he was in the general prison population. *Second Am. Compl.* [#39] at 14. Plaintiff asserts that CDOC Administrative Regulation 550–12(IV)(F)(1) provides that inmates who are classified for administrative segregation are not eligible for

earned time credits.[18]  *Id.*  Earned time credits are awarded to offenders who "demonstrate substantial and consistent progress in categories such as work and training, group living, participation in counseling and group sessions, educational programs, and progress towards goals established by the CDOC's diagnostic programs."  C.R.S. § 17-22.5-302(1) and (2).  Earned time credits operate to reduce the term for which an inmate is sentenced. *Lusero v. Welt*, No. 06-cv-1214-WYD-KMT, 2008 WL 4306230, at *4 (D. Colo. Sept.18, 2008).

The Court has reviewed the pleadings and the law.  Plaintiff's claim cannot be construed to assert that any earned time credits were actually eliminated by Plaintiff's placement in administrative segregation.  While Plaintiff may have lost the potential to receive earned time credits, the Court notes that this is merely a theoretical, and not an actual, loss.  *See Thompson v. McCullar*, No. 08-cv-02000-REB-KLM, 2009 WL 2913207, at *4 (D. Colo. Sept. 8, 2009).  According to the definition of earned time credits, these credits appear to be awarded on a discretionary basis related to the prisoner's participation in certain programs and for demonstrating certain behaviors.  Therefore, while Plaintiff might have received earned time credits were he not in administrative segregation, there certainly seems to be no guarantee that he would have necessarily done so.

Defendants rely in part on *Fistell v. Neet*, where the Tenth Circuit held that a prisoner who sought restoration of earned time credits was attempting to "implicitly question . . . the duration of [his] sentence."  125 Fed. App'x 219, 225 (10th Cir. Feb. 22, 2005) (citations omitted).  However, the Court notes that in *Fistell*, the prisoner had suffered the actual loss

---

[18]  The Court may take judicial notice of agency rules and regulations.  *Ray v. Aztec Well Services Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

of earned time credits and was seeking to restore them.  *Id.*  In the instant case, there is

no allegation that Plaintiff has actually been deprived of any earned time credits, only that

he has lost the theoretical potential to earn these credits.   Therefore, "a favorable

determination would not automatically entitle the prisoner to accelerated release," and

Plaintiff's § 1983 claim may properly proceed.  *Clarke v. Stadler*, 121 F.3d 222, 226 (5th

Cir. 1997).   Accordingly, the Court declines to dismiss on this ground, and will instead

proceed to the merits of Plaintiff's due process claims.

### 2.      Qualified Immunity

#### a.      Standard

Defendants assert that they are entitled to qualified immunity from suit on Plaintiff's

claims.   Government officials are entitled to qualified immunity from liability for civil

damages when their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person in their position would have known.  *See Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity also offers protection from trial

and other burdens of litigation.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When Defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the

Court employs a two-step process.  One part of the inquiry is whether the facts taken in the

light most favorable to the plaintiff sufficiently allege a constitutional violation.  *Saucier v.

Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were

the allegations established, there is no necessity for further inquiries concerning qualified

immunity."  *Id.*  However, "if a violation could be made out on a favorable view of the

parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly

established."  *Id.*  The Supreme Court has held that courts are no longer required to

33

address the inquiries in a particular order when evaluating a qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Further, in order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

### b.    Liberty Interest

Defendants argue that Plaintiff does not have a liberty interest in his placement in administrative segregation. *Defs.' Motion* [#48] at 13-14. In general, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Such confinement thus does not typically implicate a protected liberty interest. In *Sandin v. Conner*, however, the Supreme Court held that administrative segregation may implicate a liberty interest protected by the due process clause if it "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*

34

*v. Conner*, 515 U.S. 472, 484, 487 (1995); *see also Wilson v. Jones*, 430 F.3d 1113, 1120-21 (10th Cir. 2005).

To state a Fourteenth Amendment due process claim, a plaintiff must allege facts supporting two elements of the claim.  *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001).  First, he must show that he possesses a protected liberty interest.  *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001).  Second, he must show that he was not afforded the appropriate level of process.  *See Bartell*, 263 F.3d at 1149.  Here, Defendant argues that Plaintiff's Second Amended Complaint fails to make sufficient allegations to satisfy the first element of the Fourteenth Amendment analysis.  *Defs.' Motion* [#48] at 13-14.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).   In considering whether Plaintiff's allegations trigger a liberty interest, the Court must examine the conditions of confinement before determining whether such conditions impose an atypical and significant hardship on the inmate.  *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26) (10th Cir. 2002)).

35

The Supreme Court addressed the issue of administrative segregation in *Wilkinson v. Austin*, 545 U.S. 209 (2005).  Specifically, the Court considered whether prisoners were deprived of a liberty interest by their placement in Ohio's highest security prison and whether they were provided sufficient process regarding that placement.  *Id.* at 213.  The Court considered the totality of the conditions at the prison in determining whether confinement there imposed an atypical and significant hardship.  *Id.* at 214-15.  The conditions at issue in *Wilkinson* included: (1) limited human contact; (2) confinement for as many as twenty-four hours per day, with one hour allotted for exercise on certain days, but not every day; (3) confinement with the lights on for twenty-four hours a day; (4) indefinite incarceration at the prison with limited review regarding the continued propriety of placement there; and (5) no ability for parole.  Given the totality of these conditions, the Court found that prisoners had a liberty interest not to be confined at the prison without appropriate due process protections.  *Id.* at 220-24.

Defendants contend that Plaintiff has not placed the violation of a liberty interest at issue.  *Defs.' Motion* [#48] at 13-14.  As Defendants correctly note, mere placement in administrative segregation does not, on its own, implicate a liberty interest.  *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the conditions in question are a dramatic departure from what would be expected of a person serving a similar sentence.  This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation; (2) differs significantly from what it would have been had the prisoner remained in the general prison population; (3) inevitably increases the duration of

36

a prisoner's sentence; (4) is for an indefinite term; and (5) furthers a legitimate interest. *Sandin*, 515 U.S. at 484-87; *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Addressing the first two factors, Plaintiff is alleging that his conditions in administrative segregation were such that he was "confined to his living cell which only provides 33-square feet of unencumbered space;" that he was limited to out-of-cell exercise in a 90-square foot bare cell for one hour, five times a week; that he was permitted no outdoor exercise; and that he was otherwise exposed to "extreme sensory deprivation." *Second Am. Compl.* [#39] at 7, 10.  Plaintiff also appears to contend that these conditions differ significantly from those he would experience in the general population.  *See id.* at 7, 11 (noting, *e.g.*, that CSP has a large gym and outdoor exercise area to which Plaintiff is denied access).  While these allegations of restricted liberty, amenities, recreation, and social opportunities demonstrate harsh conditions, the Court finds that these factors fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary course of prison life to implicate a liberty interest.  *Cf., e.g.*, *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1248 (D. Colo. Sept. 14, 2011); *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *12 (D. Colo. Mar. 30, 2010); *Saleh v. Federal Bureau of Prisons*, Nos. 05-cv-02467-PAB-KLM, 06-cv-01747-PAB-KLM, 07-cv-00021-PAB-KLM, 2010 WL 5464294 (D. Colo. Dec. 29, 2010); *Rezaq v. Nalley*, No. 07-cv-02483-LTB-KLM, 2010 WL 5157317 (D. Colo. Aug. 17, 2010).  The Court therefore finds that these factors, as pled, weigh in favor of Defendants.  *See also Rezaq v. Nalley*, 677 F.3d 1001, 1014-16 (10th Cir. 2012) (discussing the "undeniably harsh" conditions at a supermax prison and finding they were not extreme as a matter of law).

Addressing the third and fourth factors, Plaintiff does not contend that the length of his sentence has been impacted or that his placement in administrative segregation is indeterminate.   In fact, as discussed above, Plaintiff notes in his Second Amended Complaint that he has been released from administrative segregation at CSP, where he spent about eleven months, and transferred to SCF.  *Second Am. Compl.* [#39] at 14.  He has since been transferred to BVCC, a lower security facility [#72].  Reviewing the Second Amended Complaint in its entirety, Plaintiff does not assert that he endured the same conditions at SCF or that he is presently enduring those conditions at BVCC.  Thus, the Court finds that the third and fourth factors weigh in favor of Defendants, in that the segregation did not unreasonably impact the length of Plaintiff's sentence and his segregation was terminated after less than a year at CSP.  *But cf. Denson v. Maufeld*, No. 09-cv-02087-WYD-KLM, 2010 WL 3835834, at *5 (D. Colo. May 19, 2010) (finding that an undefined length of administrative segregation may weigh in favor of the incarcerated plaintiff); *see also Rezaq*, 677 F.3d at 1015-16 (discussing duration and indeterminacy of placement in extreme conditions).

Finally, addressing the fifth factor, Plaintiff argues that, given that the bare fact of his Security Threat Group association would not have prevented his return to the general population, and given that Defendant Nycz therefore retaliated against him for taking refuge under the Fifth Amendment, his placement in administrative segregation was an unreasonable punishment that did not further a legitimate penological interest.  *See Second Am. Compl.* [#39] at 19.  According to Plaintiff, the reason for his placement was that "he was unwilling to cooperate with the process for returning to general population."  *Id.*  This unwillingness consisted of Plaintiff's refusal to complete a STGO status review form that

38

sought information related to Security Threat Group activity.  *Id.*  Plaintiff asserts that applicable Colorado state law and prison regulations prevent his placement in administrative segregation on the mere basis of association with a Security Threat Group. He also asserts that, because he could not be placed in administrative segregation on the mere basis of his alleged association with a Security Threat Group, that his placement in administrative segregation must have been in retaliation for invoking his Fifth Amendment right to silence when he was asked to fill out the STGO review form.  At this stage of the case, and considering the allegations asserted by Plaintiff in the Second Amended Complaint as true, the Court finds that this factor weighs in favor of Plaintiff.  *See Rezaq*, 677 F.3d at 1013-14 (discussing legitimate penological interests in the context of inmate's placement in segregation).

In summary, after carefully weighing the factors outlined above, the Court finds that Plaintiff has not sufficiently alleged the deprivation of a liberty interest.  Only one of the five factors to be considered by the Court in its analysis favors Plaintiff here.  *See generally Thompson v. Winn*, 07-cv-00025-MSK-KLM, 2008 WL 901570, *6-9 (D. Colo. Mar. 31, 2008) (noting that the "determination of whether there is a protected liberty interest is highly fact dependent and requires consideration of a number of nonexclusive factors, viewed in their totality"); *Georgacarakos*, 2008 WL 4216265, at *15 (holding that allegations of conditions which are similar to those in *Wilkinson* sufficiently stated a claim to survive a motion to dismiss).  Without the implication of a liberty interest, Plaintiff's due process claim may not go forward.  *See McMillan*, 813 F. Supp. 2d at 1249.  Because Plaintiff has failed to allege an injury of constitutional magnitude, Defendants are entitled to qualified immunity under the first prong of the *Saucier* analysis.  Accordingly, the Court **recommends** that

Plaintiff's Fourteenth Amendment due process claims (Claims Three, Four, and Five) be **dismissed without prejudice**.

## C.      Plaintiff's Motion for Summary Judgment

Plaintiff seeks entry of summary judgment in his favor for his three claims pursuant to the Fourteenth Amendment.  *See Pl.'s Motion* [#50].  Because the Court has found that none of Plaintiff's claims survive Defendants' Motion, the Court further **recommends** that Plaintiff's Motion should be **denied as moot**.

## IV.  Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion [#48] be **GRANTED**, that Plaintiff's Motion [#50] be **DENIED as moot**, and that Plaintiff's Second Amended Complaint be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated October 30, 2012, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge